



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TALLYGENICOM, L.P., *et al.*, [1]<br><br>          Debtors. | ) Chapter 11<br>)<br>) Case No. 09-10266 (CSS)<br>)<br>) **RE: D.I. 21**<br>) |

## ORDER UNDER 11 U.S.C. §§ 105(a), 363 AND 365 (I) AUTHORIZING AND APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING AND APPROVING THE ASSET PURCHASE AGREEMENT WITH RESPECT THERETO, (III) AUTHORIZING AND APPROVING THE TRANSITION SERVICES AGREEMENT WITH RESPECT THERETO, (IV) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AS NECESSARY IN CONNECTION WITH THE SALE, AND (V) GRANTING RELATED RELIEF

Upon consideration of the motion dated January 27, 2009 (D.I. 21) (the "Motion")[2] of

TallyGenicom, L.P., TallyGenicom Holdings, LLC and Printing Solutions, Inc., the debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), pursuant to

Sections 105(a), 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and

Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of two orders: one, (i) approving procedures (the "Sale

Procedures") with respect to the proposed sale (the "Sale") of substantially all of the assets (the

"Purchased Assets") of TallyGenicom, L.P. (the "Seller"), as more specifically described in the

Asset Purchase Agreement (the "APA") with Printronix, Inc. ("Printronix") annexed to the

---

[1] The Debtors are the following entities (followed by their tax identification numbers): TallyGenicom, L.P. (54-1996340), TallyGenicom Holdings, LLC (65-1160834), and Printing Solutions, Inc. (01-0758396). The mailing address for all of the Debtors for the purpose of these Chapter 11 cases is 4500 Daly Drive, Suite 100, Chantilly, VA 20151. Prior to the Petition Date, the Debtors also received certain mailings at the following address: One Solutions Way, Suite 100, Waynesboro, VA 22980.

[2] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the APA.

Motion as Exhibit D, (ii) scheduling a hearing (the "Sale Hearing") on the Sale and setting objection and bidding deadlines with respect to the Sale, (iii) approving the form and manner of notice of an auction for the Purchased Assets (the "Auction") and the Sale Hearing, (iv) approving bid protections, (v) establishing deadlines by which parties may object to the proposed assumption and assignment of the Assigned Contracts pursuant to the APA and assert claims for any cure amount, (vi) establishing procedures for the rejection of executory contracts and unexpired leases not assumed and assigned in connection with the Sale (the "Unassumed Contracts"), and (vii) granting related relief; and the other, (a) authorizing and approving the Sale free and clear of Liens, Claims and Interests pursuant to the APA, (b) authorizing and approving the APA, (c) authorizing and approving the Transition Services Agreement (the "TSA"), (d) authorizing and approving the assumption and assignment of the Assigned Contracts, as necessary in connection with the Sale, and (e) granting related relief; and a hearing to consider, among other things, approval of the Sale Procedures having been held before this Court on February 19, 2009 (the "Sale Procedures Hearing"); and the Court having entered the Sale Procedures Order on February 19, 2009; and the Court having conducted the Sale Hearing on March 10-13, 2009 to consider the approval of the Sale and related transactions pursuant to the terms of the APA annexed to this Sale Order as **Exhibit A** between the Debtors and Printronix ("Printronix" or the "Purchaser"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the APA and the transactions contemplated thereby; and the Court having reviewed and considered the Motion and any objections thereto, and the arguments of counsel and evidence adduced related thereto; and upon the Official Committee of Unsecured Creditors' objection to the Motion (D.I. 151), which objection is being withdrawn by the Official Committee of Unsecured Creditors, pursuant to the

2

global resolution set forth in the amended post-petition financing Order and as set forth on the record of the Sale Hearing; and upon the record of the Sale Procedures Hearing and the Sale Hearing and the full record of these cases; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their creditors and estates and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     This Court has jurisdiction over the Motion and the transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.     Good and sufficient notice of the Motion and the relief sought therein has been given to all interested persons and entities, including, without limitation, (i) all entities that claim any interest in or lien on the Purchased Assets; (ii) all parties to Potentially Assigned Contracts that may be assumed and assigned pursuant to this Order; (iii) all governmental taxing authorities that have, or as a result of the sale of the Purchased Assets may have, claims, contingent or otherwise, against the Debtors; (iv) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (v) all creditors (whether liquidated, contingent or unmatured) of the Debtors; (vi) all interested governmental entities; (vii) parties expressing an interest in the Purchased Assets; (viii) all foreign receivers; (ix) the Office of the United States Trustee and (x) once appointed, the Official Committee of Unsecured Creditors, and no other or further notice is required.

D.     A sound business purpose justifies the Sale of the Purchased Assets outside of the ordinary course of business.

E.     The Debtors solicited offers for, scheduled an auction of, and selected the Successful Bidder for the Sale of the Purchased Assets in accordance with the Sale Procedures Order.

F.     As no bids were received by the Bid Deadline other than the bid of the Purchaser, on February 27, 2009, the Debtors cancelled the Auction in accordance with the Sale Procedures.

G.     The consideration to be provided by the Purchaser pursuant to the APA: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Purchased Assets; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act (7A part II, U.L.A. 2 (1999)) or the Uniform Fraudulent Transfer Act (7A part II, U.L.A. 66 (1999)) or any similar laws of any state or other jurisdiction whose law is applicable to the contemplated transactions.

H.     Consummation of the Sale contemplated in the APA will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Debtors, their creditors and estates.

I.     Entry into the APA and consummation of the transactions contemplated thereby constitute the exercise of the Debtors' sound business judgment and fiduciary duties by the Debtors and such acts are in the best interests of the Debtors, their creditors and estates.

J.     The transactions contemplated by the APA are undertaken by the Seller and the Purchaser at arms' length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such, is entitled to all of the protections afforded thereby

and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser agreed to provisions in the APA that would enable the Debtors to accept a higher and better offer for the Purchased Assets; (c) other than with respect to the conditions contained in the APA requiring the commencement of these cases, the Purchaser in no way induced or caused the chapter 11 filing of the Debtors; (d) the Purchaser made the highest and best bid for the Purchased Assets; (e) all payments to be made to Purchaser and other agreements or arrangements entered into by Purchaser in connection with the transactions have been disclosed; and (f) the negotiation and execution of the APA and any other agreements or instruments related thereto was in good faith and an arm's-length transaction between the Purchaser and the Debtors.

K.      The Debtors and the Purchaser have not engaged in any conduct that would permit the APA or the Sale to be avoided under Section 363(n) of the Bankruptcy Code.

L.      The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.

M.      The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

N.      The Debtors are the sole and lawful owners of the Purchased Assets, and hold good title thereto, immediately prior to the Closing. Except as permitted under the express terms of the APA, the consummation of the Sale pursuant to the APA will be a legal, valid and effective Sale of the Purchased Assets and will vest the Purchaser (and its designees or assignees, as applicable) with all right, title, and interest of the Debtors and their bankruptcy estates in and

to the Purchased Assets free and clear of all Liens, Claims and Interests, including any such Liens, Claims and Interests (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of Seller's, Seller's estate or Purchaser's interest in the Purchased Assets, or any similar rights, or (ii) relating to taxes or any other liabilities, arising under or out of, in connection with, or in any way relating to, the Purchased Assets, Seller, Seller's estate, or its respective operations or activities prior to the Closing Date.

O.     A Sale of the Purchased Assets other than one free and clear of Liens, Claims and Interests would be of substantially less benefit to and would adversely affect the Debtors' bankruptcy estates.

P.     With respect to all parties asserting Liens, Claims and Interests in, to, or against the Purchased Assets, the Sale complies with all the requirements of section 363(f) of the Bankruptcy Code. With respect to each Interest in the Purchased Assets: (a) applicable non-bankruptcy law permits the sale free and clear of such Interest or interest; (b) the holder of such Interest or interest consents to the Sale; (c) such interest is a Interest and the price at which such property is to be sold is greater than the aggregate value of all liens on the Purchased Assets; (d) such Interest is in bona fide dispute; or (e) the holder of such Interest or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. Specifically, the Debtors' lenders and any other creditors having liens on the Purchased Assets have thoroughly reviewed the Debtors' alternatives and have consented to the Sale pursuant to section 363(f) of the Bankruptcy Code.

Q.     All parties with Liens, Claims or Interests against the Purchased Assets identified to be sold under the APA, if any, who did not object to the Motion and the relief requested

6

therein, or who withdrew their objections to the Motion, are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code; and all parties with Liens, Claims or Interests against the Purchased Assets who objected to the Motion, but who did not withdraw any such objection, can be compelled to accept a monetary satisfaction of their Liens, Claims or Interests within the meaning of Section 363(f)(5) of the Bankruptcy Code, and in each case, are enjoined from taking any action against the Purchaser, its affiliates or any agent of the foregoing to recover any claim which such person or entity has solely against the Debtors, or any of their respective affiliates.

R.      Upon the consummation of the Sale of the Purchased Assets to Purchaser, Purchaser shall not be, as a result of the purchase of the Purchased Assets or otherwise, (a) considered to have continued the business operations associated with the Purchased Assets without interruption or substantial change, and (b) substantial continuity in the operation of Seller's business before and after the purchase of the Purchased Assets shall not be considered to exist.

S.      Purchaser shall not be deemed to be a successor to the Seller, or otherwise liable, for any liability of Seller under ERISA or otherwise.

T.      By virtue of the APA or otherwise, the Purchaser will not acquire any liabilities of the Debtors, other than the Assumed Liabilities as set forth in the APA.

U.      Without limiting the generality of the foregoing, other than the Assumed Liabilities, the Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the Sale of the Purchased Assets to the Purchaser and the assignment of the Assigned Contracts to the Purchaser were not free and clear of all Liens, Claims and Interests of any kind

7

or nature whatsoever, other than the Assumed Liabilities, or if the Purchaser would or in the future could, be liable for any Liens, Claims and Interests, other than the Assumed Liabilities, including but not limited to any liability arising out of or related to any (i) employee or consultant of Seller, any Seller affiliate or the Bankruptcy Estate, including any liability with respect to or arising out of any Seller Plan, any liability with respect to the Worker Adjustment and Retraining Notification (WARN) Act and any liability with respect to COBRA coverage for employees or consultants of Seller or the Bankruptcy Estate terminated prior to or as part of the consummation of the transactions set forth in this Agreement; (ii) Seller Plan, whether or not such liability or obligation arises prior to, on, or following the Closing; (iii) any costs or expenses incurred in connection with or related to the administration of the Bankruptcy Case, including without limitation any accrued professional fees and expenses of attorneys, accountants, financial advisors and other professional advisors related to the Bankruptcy Case; (iv) liabilities under any warranty, guaranty or similar obligation of Seller or the Bankruptcy Estate arising from or relating to any acts or transactions prior to the Closing Date; (v) any liabilities or obligations with respect to any litigation or threatened litigation, claim, obligation, damages, costs and expenses relating to or arising out of any acts or omissions of Seller or the Bankruptcy Estate or any use of any of the Purchased Assets prior to the Closing Date, whether arising under contract, tort, civil or criminal law or otherwise; (vi) liabilities for environmental claims, whether arising under contract or statute, including without limitation any and all laws relating to pollution or the environment, including the Comprehensive Environmental Recovery, Compensation, and Liability Act, as amended, 42 U.S.C. § 9601, et seq. ("CERCLA"), the Resource Conservation and Recovery Act, as amended, 42 U.S.C. § 6901, et seq. ("RCRA"), the Clean Air Act, 42 U.S.C. § 7401, the Occupational Safety and Health Act, 29 U.S.C. § 600, et

seq. ("OSHA"), and all other laws and regulations relating to emissions, discharges, releases or threatened releases of pollutants, contaminants, chemicals, pesticides or industrial, infectious, toxic or hazardous substances or wastes into the environment (including ambient air, surface water, groundwater, land surface or subsurface strata) or otherwise relating to the processing, generation, distribution, use, treatment, storage, disposal, transport or handling of pollutants, contaminants, chemicals or industrial, infectious, toxic or hazardous substances or wastes (collectively, "Environmental Laws"); (vii) all obligations of Seller, its affiliates or the Bankruptcy Estate relating to taxes (other than with respect to the Purchased Assets for periods beginning after the Closing Date); (viii) all liabilities in respect of all indebtedness of Seller or the Bankruptcy Estate; (ix) any accounts payable of Seller or the Bankruptcy Estate other than the Identified A/P; (x) liabilities and obligations arising under any and all contracts of Seller other than the Assigned Contracts; (xi) liabilities and obligations under the Assigned Contracts accruing, arising out of or to be performed prior to the effective date of the assignment to Purchaser of the Assigned Contracts; (xii) any liabilities or obligations under maintenance and other deferred service contracts, including in all cases any obligation to pay money to the counter-party pursuant to or upon cancellation of any such contract; (xiii) any and all taxes accrued or assessed on the Purchased Assets prior to the Closing Date; (xiv) any Reclamation Claim or liability related thereto other than to the extent included in the Identified A/P; (xv) any liabilities of Seller to any of its affiliates or any liability affiliate of Seller; or (xvi) any liabilities arising under any and all Excluded Assets (collectively, the "Excluded Liabilities").

V.      At any time prior to the expiration of the term of the TSA, under the terms of the TSA with respect to environmental matters: (A) the Purchaser is not an "owner" or "operator" of any property where Services (as defined in the TSA) take place (the "Property") under applicable

9

Environmental Laws (as defined in the APA); (B) the Purchaser does not have authority under the TSA or otherwise to determine how hazardous substances located on the Property are handled, whether hazardous substances are disposed of, and the method of disposal of the hazardous substances, including hazardous substances that may exist on, under or about the Property or are emanating from or transported to or from the Property; (C) the Purchaser has no responsibility or authority related to pollution, leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations; and (D) the Purchaser will not direct the workings of, or manage or conduct affairs related to the Property.

W.      Good and sufficient notice of the possible transfer, assumption and assignment of the Potentially Assigned Contracts has been given to all non-debtor parties to the Potentially Assigned Contracts and no other or further notice is required. A reasonable opportunity to object or be heard has been offered to parties in interest.

X.      The Potentially Assigned Contracts are valid and binding, in full force and effect, and enforceable in accordance with their terms.

Y.      The Proposed Cure Amounts are deemed to be amounts necessary to "cure" (within the meaning of Section 365(b)(1) of the Bankruptcy Code) all "defaults" (within the meaning of Section 365(b) of the Bankruptcy Code) under such Potentially Assigned Contracts to the extent required by Section 365 of the Bankruptcy Code.

Z.      The Purchaser has demonstrated adequate assurance of future performance with respect to the Potentially Assigned Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code.

AA.      The Potentially Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary. Failure to object to the assumption and assignment of a

10

Potentially Assigned Contract is deemed consent to the assumption and assignment. The Debtors will provide for the cures and/or other payments or actions required to assume and assign the Assigned Contracts to the Purchaser as set forth in the APA.

BB.   The assumption and assignment of the Assigned Contracts as set forth in the APA is integral to the APA and is in the best interests of the Debtors, their creditors and estates and other parties-in-interest, and represents the exercise of sound and prudent business judgment by the Debtors.

CC.   NER Data Products, Inc. ("NER") and TallyGenicom, L.P. are parties to a certain Asset Sale and License Agreement dated August 7, 2006 (the "NER License Agreement"). NER and TallyGenicom, L.P. are also parties to a certain Amended and Restated Manufacturing Agreement dated August 27, 2006 (the "NER Manufacturing Agreement" and together with the NER License Agreement, the "NER Agreements"). Pursuant to the NER Manufacturing Agreement, the Debtors are in possession of certain property owned by NER identified on Exhibit B attached to the NER Manufacturing Agreement (the "NER Property").

DD.   The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

EE.   Upon entry of this Sale Order, the Debtors shall have full power and authority to consummate the Sale contemplated by the APA. The APA and the Sale have been duly and validly authorized by all necessary action of the Debtors and no shareholder vote, board resolution or other corporate action is required of the Debtors for the Debtors to consummate such Sale or the other transactions contemplated in the APA.

FF.   Cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004 and 6006.

11

GG.     The entry of this Order (the "Sale Order") is in the best interests of the Debtors, their creditors and estates, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion, the APA, the TSA and the transactions contemplated thereby shall be, and hereby are, granted and approved in all respects as modified by this Order.

2.     The Debtors are authorized and directed to close, consummate and comply with the APA, the TSA and all other agreements and documents related to and contemplated thereby (collectively, the "Sale Documents"), which Sale Documents hereby are authorized and approved in all respects and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the APA.

3.     Until the expiration of the term of the TSA, all operations of the Debtors' business shall be the operations of the Debtors for all purposes.

4.     All objections and responses to the Motion are hereby resolved in accordance with the terms of this Order and as set forth in the record at the Sale Hearing. To the extent such objections or responses were not otherwise overruled, withdrawn, waived, settled or resolved, they, and all reservations of rights included therein, are hereby overruled and denied.

5.     The Purchaser's offer for the Purchased Assets, as embodied in the APA, is the highest and best offer for the Purchased Assets and is hereby approved.

6.     Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Sale by the Debtors to the Purchaser of the Purchased Assets and the transactions related thereto, upon the Closing under the Sale Documents, are authorized and approved in all respects.

7.     Subject to the payment by the Purchaser to the Seller of the consideration provided for in the APA pursuant to sections 363 and 365(a) of the Bankruptcy Code, the Sale of

the Purchased Assets by the Seller to the Purchaser shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title and interest of the Seller in and to the Purchased Assets free and clear of all Liens, Claims and Interests pursuant to section 363(f) of the Bankruptcy Code, effective as of the Closing.

8.      Pursuant to Section 363(f) of the Bankruptcy Code, the Sale of the Purchased Assets shall be free and clear of all Liens, Claims and Interests and all liabilities of the Debtors whether known or unknown, including, but not limited to, Liens, Claims or Interests asserted by any of the Debtors' creditors, vendors, suppliers, employees, executory contract counterparties, or lessors. The Purchaser shall not be liable in any way (as successor entity or otherwise) for any claims that any of the foregoing parties or any other third party may have against the Debtors. Any and all valid and enforceable Liens, Claims and Interests on, against or in the Purchased Assets, including those asserted by the Debtors' lenders, shall be transferred, affixed, and attached to the net proceeds of the Sale with the same validity, priority, force and effect such Liens, Claims and Interests had on the Purchased Assets immediately prior to the Sale and subject to the rights, claims, defenses, and objections, if any, of the Debtors and all interested parties with respect to any such asserted Liens, Claims and Interests. The Sale of the Purchased Assets to the Purchaser shall vest the Purchaser with all the right, title and interest of the Debtors to the Purchased Assets free and clear of Liens, Claims and Interests.

9.      The Purchaser has not assumed or otherwise become obligated for any of the Seller's liabilities other than as set forth in the APA, and the Purchaser has not purchased any of the "Excluded Assets," as defined in Section 1.2 of the APA. Notwithstanding anything to the contrary herein or in the APA, the NER Property are not assets of the Debtors' estates under section 541 of the Bankruptcy Code and are hereby excluded from the Purchased Assets.

10.    Except for the Assumed Liabilities as defined and provided for in the APA, pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtors, the Debtors' affiliates, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax, and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Liens, Claims and Interests, in or with respect to the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the closing date under the APA or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Liens, Claims and Interests against the Purchaser or any affiliate, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Purchased Assets; including claims under section 365(n) of the Bankruptcy Code against the Purchaser with respect to the Purchased Assets. To avoid doubt, the foregoing shall not prevent the Debtors, their estates, successors, or permitted assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns in accordance with the terms of the APA.

11.    Except for the Assumed Liabilities as defined and provided for in the APA, Purchaser shall not acquire or assume, and shall have no liability or obligation for any liabilities of the Debtors, as a successor in interest or otherwise, including, without limitation any liability for any remedies sought by the National Labor Relations Board or by any Person under the

14

WARN Act or state analogue or ERISA or any liability with respect to COBRA Coverage for employees or consultants of Seller terminated prior to or as part of the consummation of the transaction set forth in the APA with regard to any conduct by the Debtors occurring prior to the Closing Date or any other liability to, arising out of, or related to the Excluded Assets, in each case whether arising prior to or after the Closing Date.

12. The Purchaser has not assumed or otherwise become obligated for any of the Seller's liabilities other than as set forth in the APA, and the Purchaser has not purchased any of the "Excluded Assets," as defined in Section 1.2 of the APA.

13. Section 6.13 of the APA is amended to include releases and waivers of Bankruptcy Claims (as defined in the APA) against Designated Creditors (as defined in the amended final DIP Order).

14. If any person or entity that has filed any financing statement, mortgage, mechanic's lien, *lis pendens* or other document or instrument evidencing liens with respect to any of the Purchased Assets shall have failed to deliver to the Seller and Purchaser prior to the Closing of the APA, in proper form for filing and executed by the appropriate entity or entities, termination statements, instruments of satisfaction and releases of all Interests which such person or entity has with respect to the Purchased Assets, then (a) the Seller is authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity and (b) Purchaser is authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and interests in the Purchased Assets as of the Closing of the APA.

15

15.     This Order (a) is and shall be effective as a determination that, upon Closing, Liens existing as to the Purchased Assets conveyed to the Purchaser have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets conveyed to the Purchaser.

16.     The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Liens, other than Assumed Liabilities (as defined below), shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order. However, the Debtors and the Purchaser, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the APA and this Sale Order.

17.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Sale Order.

18.     After the date of Closing of the APA, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect liens or a security interest against any of the Purchased Assets on account of, or (b) collect or attempt to collect from the Purchaser or any of its affiliates, any tax (or other amount alleged to be owing by the Debtors) (i) for any period commencing before and concluding prior to the date of Closing or (ii) assessed prior to and payable after the date of Closing.

19.     This Sale Order shall be binding upon and govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons or entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report to or insure title or state of title in or to any of the Purchased Assets.

20.     Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, all "persons" (as that term is defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against the Purchaser or the Purchaser's affiliates (as they existed immediately prior to the Closing) to recover any claim which such "person" has solely against the Debtors or the Debtors' affiliates (as they exist immediately following the Closing).

21.     The transactions contemplated under the APA do not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the

17

Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.

22. All persons or entities who are presently, or at the Closing of the APA will be, in possession of any of the Purchased Assets conveyed to the Purchaser hereunder are hereby directed to surrender possession of such Purchased Assets to the Purchaser at the Closing.

23. From and after the date of the entry of this Sale Order, the Debtors or any creditor or other party in interest shall not take or cause to be taken any action that would interfere with the transfer of the Purchased Assets to the Purchaser in accordance with the terms of this Sale Order.

24. Pursuant to Section 365 of the Bankruptcy Code, the Debtors are authorized to assume and assign the Assigned Contracts, as defined in the APA, to the Purchaser upon written direction from the Purchaser prior to the Contract Determination Date as set forth herein and in the APA. As soon as reasonably practicable following such direction from the Purchaser, the Debtors will provide notice to the counterparties to such Assigned Contracts of the effectiveness of the assumption and assignment thereof and payment of applicable cure amounts as described below.

25. Purchaser shall have a period of not less than the earlier of (i) 180 days from the Closing Date and (ii) 210 days from the Petition Date with regard to real property leases, and 90 days from the Closing Date with regard to all other contracts, to direct the Debtors to assume and assign a Potentially Assigned Contract. Potentially Assigned Contracts not designated in writing by Printronix as Assigned Contracts on or before the Contract Determination Date (as defined in the APA) shall be Excluded Assets (as defined in the APA).

18

26. Upon assumption and assignment, the cure amounts payable to the counterparties to the Assigned Contracts in the amounts set forth in **Exhibit B** to this Sale Order (the "Cure Schedule") shall be paid as follows: (a) the Debtors shall pay such cure amounts up to an aggregate amount of $300,000 as set forth in the APA, and (b) to the extent the aggregate cure amounts exceed $300,000 (the "Excess Cure Costs"), then the Purchaser shall pay such Excess Cure Costs pursuant to the terms of the APA. Except as set forth herein, the Cure Amounts set forth in the Cure Schedule shall be deemed the entire cure obligation of the Debtors due and owing under section 365 of the Bankruptcy Code. Any non-debtor party to an Assigned Contract is barred, enjoined and prohibited from asserting any claim (as defined in Section 101(5) of the Bankruptcy Code) ("Claim") against the Debtors or their property or estates other than the Cure Amount with respect to such Assigned Contract or from offsetting, seeking to offset, recoup, deduct or set-off any Claims such party may have against the Debtors from any amounts that may be or may become due in the future to the Purchaser under such Assigned Contract.

27. Pursuant to and in reliance upon the terms of the settlement stipulation (the "XIP/Printronix Settlement Stipulation") between Xerox International Partners ("XIP") and Printronix resolving *The Limited Objection by Xerox International Partners to the Debtors' (I) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts* [Docket No. 159] and *Amended Limited Objection by Xerox International Partners to the Debtors' (I) Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Proposed Cure Amounts* [Docket No. 199] (together, the "Objections"), attached hereto as **Exhibit C** and expressly incorporated into this Sale Order, the Objections shall be resolved and shall be withdrawn by XIP following: (a) entry of this Sale Order; and (b) closing of the sale contemplated by this Sale Order. In addition, upon

*to the greatest extent permissible under applicable law*

the occurrence of events (a) and (b), the Debtors shall be released from any liability in connection with claims asserted in the Objections. The Court retains exclusive jurisdiction to enforce and implement the terms of XIP/Printronix Settlement Stipulation, and Printronix is authorized to file the XIP/Printronix Settlement Stipulation under seal in order to preserve the confidential commercial information contained therein.

28.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' or the Purchaser's right to enforce every term and condition of the Assigned Contracts.

29.     The Purchaser has demonstrated adequate assurance of future performance with respect to all Potentially Assigned Contracts. The proposed assumption and assignment of the Assigned Contracts satisfies the requirements of the Bankruptcy Code including, inter alia, sections 365(b)(1) and (3) and 365(f) of the Bankruptcy Code to the extent applicable.

30.     All parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Purchaser or the Seller any assignment fee, default or breach under, or any claim or pecuniary loss or condition to assignment, arising under or related to, the Assigned Contracts existing as of the Closing or arising by reason of the Closing.

31.     The Assigned Contracts, upon assignment to the Purchaser, shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability thereunder.

32.     Any provision in any Assigned Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtors are

unenforceable and is hereby nullified with respect to the sale and assignments authorized by this Order, and all Assigned Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Amounts, if any. No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assigned Contracts or restrict use of the premises which are demised by an Assigned Contract to a specific named tenant or business shall have any force and effect with respect to the sale and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under Section 365(e) of the Bankruptcy Code.

33.     Any party having the right to consent to the assumption and assignment of an Assigned Contracts that failed to object to such assumption and assignment is deemed to have consented to such assumption and assignment as required by Section 365(c) of the Bankruptcy Code. The Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

34.     Upon assignment, the Purchaser, its successors and assigns shall have the express right to exercise any and all unexercised extension options, renewal options, and/or non-disturbance rights or protections, notwithstanding any language in the Assigned Contracts making the exercise of such rights personal to any party or limiting the exercise of such rights only to an assignee who is an affiliate of the original named party under such Assigned Contract or an entity that acquires all or substantially all of the assets of the original named party to such

Assigned Contract. Upon assignment, the Purchaser shall exercise said rights consistent with the terms of any such Assigned Contract.

35.     The Purchaser is a good faith purchaser entitled to the benefits and protections afforded by Section 363(m) of the Bankruptcy Code (including with respect to the transfer of the Assigned Contracts assigned as part of the Sale of the Purchased Assets pursuant to Section 365 of the Bankruptcy Code and this Order); accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Purchased Assets shall not affect the validity of the Sale of the Purchased Assets to the Purchaser (including with respect to the transfer of the Assigned Contacts assigned as part of the Sale of the Purchased Assets pursuant to Section 365 of the Bankruptcy Code and this Order).

36.     The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable, and the Sale may not be avoided under Section 363(n) of the Bankruptcy Code.

37.     Upon the Closing, and in accordance with the APA and the Dymas DIP Financing, a portion of the Agent Aggregate Debt (as defined under the Dymas DIP Financing), in the aggregate principal amount equal to the Adjusted Amount (as defined in the APA) would be assumed, amended and evidenced by the New Dymas Facilities (as defined in the APA) in the aggregate principal amount of the Adjusted Amount in order to enable the acquisition of the Business (as defined in the APA) as a going concern, and such assumption and amendment of debt is being undertaken by Dymas in order to preserve the value of the Prepetition Debt (as defined in the Dymas DIP Financing), not as a new investment origination or loan decision on the part of the Lenders (as defined in the Dymas DIP Financing).

38.     With respect to the transactions consummated pursuant to this Sale Order, this Sale Order shall be sole and sufficient evidence of the transfer of title to the Purchaser, and the Sale consummated pursuant to this Sale Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Sale Order, including without limitation, all foreign affiliates and foreign receivers, filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order in consummating the transactions contemplated hereby.

39.     The Sale of the Purchased Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Sale does not constitute a *sub rosa* Chapter 11 plan.

40.     This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the APA, the Sales Procedures Order, and this Sale Order in all respects and further to hear and determine any and all disputes between the Debtors and/or the Purchaser, as the case may be, and any non-debtors party to, among other things, any Assigned Contracts; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the APA, the Sales Procedures Order, and this Sale Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and

shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

41.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, in accordance with the terms thereof without further order of the Court.

42.     From and after the date hereof, each Debtor shall act in accordance with the terms of the APA and the TSA and each Debtor, to the extent it already has not done so, shall execute any Sale Document at or prior to Closing.

43.     To the extent of any inconsistency between the provisions of this Sale Order and the APA, or any documents executed in connection therewith, the provisions contained in this Sale Order shall govern.

44.     The provisions of this Sale Order are nonseverable and mutually dependent.

45.     This Sale Order shall inure to the benefit of the Purchaser, the Debtors, and their respective successors and assigns, including but not limited to any chapter 11 or chapter 7 trustee that may be appointed in the Debtors' cases and shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with these cases or any other or further case involving the Debtors, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

46.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the APA or the terms of this Order.  The provisions of this Sale Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered

confirming any chapter 11 plan of the Debtors, converting the Debtors' cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code, or dismissing the Debtors' chapter 11 cases.

47. The transactions contemplated by the APA shall be exempt from any so-called "bulk-sale" law in all necessary jurisdictions arising as a result of or in connection with the Debtors' Sale and transfer of the Purchased Assets to the Purchaser.

48. Any claim under the APA against the Debtors not satisfied shall constitute an allowed administrative claim under section 503(b) and 507(a)(1) of the Bankruptcy Code and shall be treated with such priority if the above-captioned bankruptcy cases convert to cases under chapter 7 of the Bankruptcy Code; provided however, if any such claim is not known by the Purchaser as of the time of confirmation of any plan of reorganization for any Debtor, such claim shall not be discharged pursuant to the confirmation of any such plan of reorganization but instead shall continue as a liability of the reorganized entity, subject in all respects to the time limitations on any such claim set forth in the APA. Further, Purchaser and its affiliates waive any and all claims to the Settlement Proceeds, as defined in the global resolution set forth in the amended post-petition financing Order and as set forth on the record of the Sale Hearing.

49. The Debtors shall not transfer to Purchaser "personally identifiable information" as such term is defined in section 101(41A) of the Bankruptcy Code.

50. To resolve the objection to the Sale (D.I. 181) filed by TallyGenicom, AG ("TAG"), a non-Debtor affiliate:

(a) The Debtors hereby confirm that, with respect to the assets listed on or referenced in Schedules 5.17(a) and 6.16 of the APA, the Debtors are selling all of their right, title and interest, including any right of use, as to those assets; provided that the foregoing does

25

not constitute delivery of the assets identified on Schedule 6.16 to the Purchaser free and clear of Liens, Claims, and Interests.

(b) With respect to TAG's asserted interest in the intellectual property (the "IP") that is the subject of that certain Intellectual Property Purchase and Sale Agreement, dated August 1, 2005, and referenced in Section 5.17(a) of the APA, by and between TAG and Debtor TallyGenicom Holdings LLC, pending the entry of a final, non-appealable order (the "Final IP Order") of this Court determining the extent, validity and priority of any interest of TAG and Dymas, as agent, in the IP, a pro rata $1.5 million, non-voting, participation interest in the notes evidencing the First Lien Term Debt (35%) and the Second Lien Term Debt (65%) to be issued to Dymas (the "Notes") at the Closing (the "Participation Interests") as contemplated by Sections 3.2(a) and 7.1(e) of the APA shall be placed in escrow (the "IP Escrow"). TAG shall have no rights against Purchaser and shall not be deemed a party to or beneficiary of the New Dymas Facilities. A portion of the interest accruing at the federal judgment rate from the Petition Date through the date of entry of the Final IP Order and paid on the Notes to the extent of the participation interest shall be made part of the Escrow and shall be remitted to the prevailing party under the Final IP Order. For the determination of the issues set forth in this paragraph, TAG has and shall be deemed to have consented to the jurisdiction of this Court and Dymas' standing in any adversary proceeding regarding such issues.

51. Notwithstanding anything to the contrary herein, the Debtors are authorized, but not required, to assume and assign the NER License Agreement upon payment of the Cure Amounts set forth in the Cure Schedule plus all amounts accruing under the NER License Agreement from and after the Petition Date through the effective date of the assumption and assignment of the NER License Agreement (the "License Cure Payment"). Further, the Debtors

arc authorized, but not required, to assume and assign the NER Manufacturing Agreement. If both NER Agreements are assumed and assigned, the following terms and conditions represent adequate assurance of future performance under section 365 of the Bankruptcy Code: (a) the Debtors or their assignee shall make the License Cure Payment at the same time that NER pays the amount owed to the Debtors under the NER Manufacturing Agreement; (b) future royalties owed to NER by the Debtors or their assignee under the NER License Agreement ("License Royalties") shall be calculated monthly and used first to offset any amount owed by NER to the Debtors or their assignee under the NER Manufacturing Agreement ("Manufacturing Receivables"); (c) once the offset referenced above has been calculated and applied, the balance of any License Royalties or Manufacturing Receivables shall be paid to or by NER in accordance with the NER Agreements; and (d) with respect to the NER Manufacturing Agreement, payment terms shall be net thirty days from the date of invoice in accordance with the written agreement.

52.     Because time is of the essence, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the stay of (i) orders authorizing the sale, use, or lease of property of the estate, as set forth in Bankruptcy Rule 6004(h), (ii) orders authorizing the assignment of an executory contract or unexpired lease, as set forth in Bankruptcy Rule 6006(d), and (iii) proceedings to enforce a judgment, as set forth in Bankruptcy Rule 7062, or otherwise shall not apply to this Sale Order.

53.     The Debtors are authorized to close the Sale immediately upon entry of this Sale Order.

Dated: Wilmington, Delaware
        March 16, 2009

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE