IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| PRINTING SOLUTIONS LP, et al.,[1] ) | Case No. 09-10266 (CSS) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| ) | Hearing Date: November 12, 2009 at 10:30 a.m. (ET) |
| ) | Objection Deadline: November 5, 2009 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 349 AND 1112(b) AND FED. R. BANKR. P. 1017 AND 2002 (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES AND (II) GRANTING RELATED RELIEF**

Printing Solutions LP, Printing Solutions LLC, and Printing Solutions Inc., debtors and debtors-in-possession in the above-captioned cases (collectively the "Debtors"), hereby move (the "Motion") this Court for entry of an order, pursuant to sections 105(a), 349 and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 1017 and 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) dismissing the Debtors' chapter 11 cases and (ii) granting certain related relief. In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors are the following entities (followed by their tax identification numbers): Printing Solutions LP (54-1996340), Printing Solutions LLC (65-1160834), and Printing Solutions Inc. (01-0758396). The mailing address for all of the Debtors for the purpose of these chapter 11 cases is One Solutions Way, Suite 100, Waynesboro, VA 22980.

2. The statutory predicates for the relief sought herein are sections 105(a), 349 and 1112(b) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 1017 and 2002.

## BACKGROUND

3. On January 27, 2009 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. The Debtors are debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. The events leading up to the Petition Date are set forth in the Declaration of John A. Waksmunski in Support of First Day Relief (D.I. 3), filed on the Petition Date and incorporated herein by reference.

5. On February 6, 2009, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the Debtors' chapter 11 cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code.

A. **The DIP Facility and the Committee Settlement**

6. On the Petition Date, the Debtors filed the *Motion of Debtors for Orders (a) Authorizing Debtors (i) to Obtain Post-Petition Financing and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 USC Section 364; (ii) to Use Cash Collateral Pursuant to 11 USC Section 363; (iii) to Provide Adequate Protection Pursuant to 11 USC Section 361; and (b) Scheduling a Final Hearing and Establishing Related Notice Requirements* (D.I. 16) (the "DIP Motion").

7. On March 3, 2009, the Court entered the *Final Order Authorizing Debtors to: (a) Incur Postpetition Debt; (b) Use Certain Cash Collateral; (c) Grant Adequate Protection and Provide Security and Other Relief to Dymas Funding Company, LLC, the Other Lenders and*

*the Pre-Petition Subordinated Note Lenders; and (d) Grant Related Relief* (D.I. 172) (the "Final DIP Order"). By the Final DIP Order, the Court approved the terms and conditions of that certain revolving debtor-in-possession financing facility (the "DIP Facility") provided by the lenders party to that certain Postpetition Agreement (as defined in the Final DIP Order) and Dymas Funding Company, LLC ("Dymas"), as administrative agent to the postpetition lenders, to the Debtors pursuant to the budget attached thereto (as amended from time to time, the "Budget") and the Debtors' stipulation that Dymas has valid, binding, enforceable and perfected first-priority liens on substantially all of the Debtors' assets, senior and superior in priority to all claims of other secured and unsecured creditors of the Debtors' estates, except as otherwise provided therein.

8. On March 12, 2009, the Court entered the *First Order Amending Final Financing Order and Granting Related Relief* (D.I. 218) (the "First Amending DIP Order"). A copy of the First Amending DIP Order is attached hereto as **Exhibit A**. By the First Amending DIP Order, the Court approved certain modifications to the terms of the Final DIP Order as part of a settlement with the Committee (the "Committee Settlement").

9. As set forth more fully in the First Amending DIP Order, the Committee Settlement provides for, among other things, (a) releases of avoidance actions under the Bankruptcy Code against the Designated Creditors (as defined in the Firs Amending DIP Order), (b) the establishment of a trust by the Committee for the benefit of the Designated Creditors (the "Trust") and (c) the funding of $300,000 into the Trust by certain non-debtor parties to the Committee Settlement, including the Debtors' lenders and certain members of the Debtors' management. The First Amending DIP Order further provides that the Trust funds are not property of the Debtors' estates. Upon information and belief, the Committee has prepared trust

documents to govern the administration of the Trust, including the reconciliation of the claims of and distribution of Trust funds to the Designated Creditors. Upon further information and belief, as part of the resolution of matters relating to the Printronix Sale (as defined below) and the full implementation of the Committee Settlement pursuant to the First Amending DIP Order, the Trust will have been funded in full prior to the hearing on this Motion.

10. On October 6, 2009, the Court entered the *Second Order Amending Final Financing Order and Granting Related Relief* (D.I. 515) (the "Second Amending DIP Order"). By the Second Amending DIP Order, the Court approved the extension of the termination date of the DIP Facility through December 31, 2009 (the "DIP Termination Date") and the amended Budget, which provides for the funding of certain Debtor obligations through the DIP Termination Date.

B.    **The Printronix Sale**

11. Prior to the Petition Date, the Debtors determined that pursuing a sale of some or all of their assets (the "Assets") was the most prudent means to maximize value for the Debtors' estates and creditors and that the best option for the Debtors was to sell substantially all of their Assets (the "Printronix Assets") to Printronix, Inc. ("Printronix"). Accordingly, on the Petition Date, the Debtors filed their *Motion of the Debtors for Orders: One (I) Approving Procedures with Respect to the Proposed Sale of the Assets of the Debtors, (II) Scheduling a Hearing on the Sale and Setting Objection and Bidding Deadlines with Respect to the Sale, (III) Approving the Form and Manner of Notice of an Auction for the Debtors' Assets and the Sale Hearing, (IV) Approving Bid Protections, and (V) Granting Related Relief; and the Other (A) Authorizing the Sale Free and Clear of Liens, Claims, Encumbrances, and Interests, Pursuant to the Asset Purchase Agreement Related Thereto, (B) Authorizing and Approving the Asset*

*Purchase Agreement, (C) Authorizing and Approving the Transaction Services Agreement, (D) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, as Necessary in Connection with the Sale, and (E) Granting Related Relief* (D.I. 21) seeking this Court's authority to consummate the sale of the Printronix Assets to Printronix (the "Printronix Sale").

12. On February 19, 2009, this Court entered the *Order (I) Approving Procedures With Respect To The Proposed Sale Of The Assets Of The Debtors, (II) Scheduling A Hearing On The Sale And Setting Objection And Bidding Deadlines With Respect To The Sale, (III) Approving The Form And Manner Of Notice Of An Auction For The Debtors' Assets And The Sale Hearing, (IV) Approving Bid Protections, And (V) Granting Related Relief* [D.I. 130], authorizing the Debtors to conduct an auction sale of the Printronix Assets free and clear of all liens, claims and encumbrances to Printronix, or to the prevailing bidder submitting the highest and best offer. The only bid received for any part of the Debtors' business and Assets was that of Printronix for the Printronix Assets.

13. On March 16, 2009, this Court entered the *Order (I) Authorizing and Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing and Approving the Asset Purchase Agreement with Respect Thereto, (III) Authorizing and Approving the Transition Services Agreement with Respect Thereto, (IV) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases as Necessary in Connection with the Sale, and (V) Granting Related Relief* (D.I. 229) (the "Sale Order") approving the Printronix Sale, including, among other things, the release of avoidance actions against certain of the Debtors employees and vendors. The Printronix Sale closed on March 20, 2009 (the "Printronix Closing Date").

14. Pursuant to the terms and conditions of that certain Transition Services Agreement entered into by the parties as part of the Printronix Sale, the Debtors are obligated to perform certain transition services for Printronix for a minimum of six (6) months and a maximum of nine (9) months following the Printronix Closing Date (the "TSA Period"). Currently, the Debtors anticipate that the TSA Period will terminate on or about October 31, 2009, after which the Debtors will cease all operations and transition services for Printronix.

C. **The XIP Sale**

15. Following the sale of the Printronix Assets to Printronix, the Debtors had certain minimal Assets remaining in their estates, including Assets (the "XIP Assets") that were used or held for use by the Debtors solely or primarily in connection with the operation of the Debtors' business of designing, developing and manufacturing controllers for laser print engines, including the design, development and manufacture of laser controller boards and related software (the "Controller Business"). The Debtors explored the possibility of a transaction involving the XIP Assets and the Controller Business and ultimately entered into negotiations with Xerox International Partners ("XIP").

16. On May 22, 2009, Debtor Printing Solutions LP and XIP entered into a letter of intent regarding the sale of the XIP Assets and on July 2, 2009, the Debtors filed the *Motion of the Debtors for Order: (I) Authorizing the Sale of Assets Related to Debtors' Controller Business to Xerox International Partners, Free and Clear of Liens, Claims, Encumbrances and Interests; (II) Authorizing and Approving the Asset Purchase Agreement; (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (IV) Granting Related Relief* (D.I. 423)

seeking this Court's authority to consummate the sale of the XIP Assets to XIP (the "XIP Sale" and, together with the Printronix Sale, the "Sales").

17. On July 22, 2009, this Court entered the *Order: (I) Authorizing the Sale of Assets Related to Debtors' Controller Business to Xerox International Partners, Free and Clear of Liens, Claims, Encumbrances and Interests; (II) Authorizing and Approving the Asset Purchase Agreement; (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (IV) Granting Related Relief* (D.I. 436) approving the XIP Sale. The XIP Sale closed on July 31, 2009.

### D. The Debtors' Estates

18. With the closing of the Sales and the impending completion of the TSA Period, the Debtors have been focused on the winding down of operations. At this point in the chapter 11 cases, considering the Debtors' limited resources and that substantially all of their few remaining assets are encumbered by liens in favor of their lenders, the Debtors believe that any assets they have remaining are either burdensome to their estates or of inconsequential value and benefit to their estates. First, as discussed above, substantially all of the Debtors' assets have been sold pursuant to the Sales. Second, the Debtors (and, on information and belief, the Committee) have conducted a general review of prepetition payments to non-released parties and analyzed other potential litigation targets and concluded that there would be no substantial net benefit to the estates to pursue those few preference claims or other avoidance actions that have not already been sold or released. Third, the proceeds from the Sales are insufficient to satisfy all of the Debtors' remaining obligations under the DIP Facility and the Prepetition Documents (as defined in the Final DIP Order).

19. Considering all of the foregoing information and other relevant factors, the Debtors have concluded that there is no realistic possibility that they will be able to confirm a plan in these cases. Furthermore, as the Debtors have liquidated substantially all of their assets and have no apparent means of generating further income for their estates, the Debtors believe that, absent a dismissal of these cases, their estates will incur postpetition losses for which no funding is available.

## **RELIEF REQUESTED**

20. By this Motion, the Debtors respectfully request that the Court enter an order: (a) dismissing the Debtors' chapter 11 cases and (b) granting certain related relief.

## **BASIS FOR RELIEF**

21. The Court should dismiss the chapter 11 cases because the Debtors (a) are unable to bear the administrative burden of effectuating a plan of reorganization and (b) have no remaining estate assets to administer.

22. Under section 1112(b) of the Bankruptcy Code, a court may dismiss a debtor's chapter 11 case "for cause." 11 U.S.C. § 1112(b); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999). Section 1112(b) of the Bankruptcy Code states, in relevant part:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause. . . ."

A determination of cause is made by the court on a case-by-case basis. *Albany Partners*, 749 F.2d at 674. In addition, the decision to dismiss a case is particularly delegated to the bankruptcy

court's sound discretion. *See In re Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 1999 WL 587790, at *2 (Bankr. E.D. Pa. 1999) (citing *In re Atlas Supply Corp.*, 857 F.2d 1061, 1063 (5th Cir. 1988)). Therefore, it is clear that the Court is authorized to dismiss the Debtors' chapter 11 cases upon a showing of "cause."

23. The legislative history of section 1112(b) of the Bankruptcy Code and relevant case authority indicate that a court has wide discretion to use its equitable powers to dispose of a debtor's case. H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5903; *see also In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (stating a court has broad discretion to dismiss a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (stating that determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); *In re Koerner*, 800 F.2d 1358, 1367 & n. 7 (5th Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code).

24. Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of sixteen grounds for dismissal. 11 U.S.C. § 1112(b)(4)(A)-(P); *Frieouf v. U.S.*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is nonexhaustive); *In re Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 799 (E.D. Pa. 2000) ("[T]he bankruptcy court may find 'cause' for conversion or dismissal for reasons beyond the ten enumerated examples in § 1112(b)."). One such ground is where a party-in-interest shows that there is an "inability to effectuate a plan [of reorganization]." 11 U.S.C. § 1112(b)(4)(M); *Preferred Door Co.*, 990 F.2d at 549; *Sullivan Cent. Plaza I*, 935 F.2d at 728.

Here, the Court may dismiss the Debtors' chapter 11 cases because the Debtors are unable to effectuate substantial consummation of a plan of reorganization. 11 U.S.C. § 1112(b).

25. Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry one out" or where the "core" for a workable plan of reorganization "does not exist." *See Preferred Door*, 990 F.2d at 549 (quoting *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989)) (finding an "[i]nability to effectuate a plan arises where debtor lacks the capacity 'to formulate a plan or carry one out.'"); *Blunt*, 236 B.R. at 865 (finding cause to dismiss debtor's case under section 1112(b)(2) of the Bankruptcy Code where "core" for a workable plan of reorganization found to be nonexistent).

26. With respect to the Debtors' chapter 11 cases, it is simply not possible or practical to effectuate a plan of reorganization because the Debtors have liquidated all or substantially all of their assets and the proceeds of those assets are insufficient to allow the Debtors to propose a feasible plan. Substantially all of the Debtors' few remaining assets are encumbered by the liens of their prepetition and postpetition lenders. The Debtors have no other apparent sources of income. It, therefore, is clear that the Debtors will be unable to propose a plan.

27. Additionally, as stated in section 1112(b)(4)(A) of the Bankruptcy Code, cause exists upon a finding of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation . . . ." 11 U.S.C. § 1112(b)(4). Such cause is present here.

28. If the Debtors' cases are not promptly dismissed, the Debtors likely would incur additional administrative expenses for which they will not have the ability to pay.

Accordingly, absent the relief requested here, the Debtors' estates will experience substantial or continuing losses, satisfying the first element of "cause" under section 1112(b)(4)(A).

29. Moreover, as the Debtors' businesses have now been fully liquidated through the Sales, they are beyond rehabilitation. Thus, the second element of "cause" under section 1112(b)(4)(A) is indisputably present.

30. In sum, the Debtors have met their burden of proof to show that cause exists to dismiss the Debtors' chapter 11 cases under section 1112(b) of the Bankruptcy Code due to their inability to effectuate a plan of reorganization and for cause under section 1112(b)(4)(A) of the Bankruptcy Code.

31. Once a court determines that cause exists to dismiss a chapter 11 case, the court must also evaluate whether dismissal is in the best interests of the creditors and of the estate. *See In re Superior Sliding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994); *In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995), aff'd 200 B.R. 568 (E.D. Pa. 1996). A variety of factors demonstrate that it is in the best interest of the creditors and the Debtors' estates to dismiss the chapter 11 cases.

32. Among other things, a dismissal of a chapter 11 bankruptcy case meets the best interests of the creditors' test where a debtor has nothing to reorganize and the debtor's assets are fixed and liquidated. *See In re BTS, Inc.*, 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); *Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 245 B.R. at 799 (finding that a reorganization to salvage business which ceased doing business was unfeasible); *In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing a chapter 11 bankruptcy proceeding in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).

33.     As explained above, the Debtors have nothing left to reorganize. As of the date of this Motion, virtually all of the Debtors' assets have been liquidated. Furthermore, the proceeds thereof have been distributed to the Debtors' secured lenders or, at minimum, are fully subject to the liens of the Debtors' secured lenders. What assets remain consist principally of those few causes of action, if any, that were not previously conveyed out of the estates in connection with the Sales or released. Thus, dismissal of the Debtors' chapter 11 cases is in the best interest of the creditors because what few assets that remain as of this stage of the cases are either burdensome to the Debtors' estates or of inconsequential value and benefit to their estates.

34.     In addition, dismissal is proper because the alternative—conversion to chapter 7—is impractical. One element of the best interest of the "estate" focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. *In re Clark*, 1995 WL 495951, at *5 (N.D. Ill. 1995); *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993). The prime criterion for assessing the interests of the estate is the maximization of its value as an economic enterprise. *See id.* Here, dismissal of the Debtors' cases will maximize the value of the Debtors' estates because conversion to a chapter 7 liquidation and appointment of a trustee would impose significant and unnecessary additional administrative costs upon the Debtors' estates.

35.     Finally, the best interest of creditors' test is met where interested parties, other than the debtor, agree that dismissal is the proper disposition of the case. *See Camden Ordinance Arkansas, Inc.*, 245 B.R. at 798; *Mazzocone* 183 B.R. at 411-12. Here, the Court should dismiss the Debtors' chapter 11 cases because the Committee favors dismissal. Following extensive communications between the Debtors and the Committee, the Motion represents the Debtors' best effort at reaching a solution that benefits all of the creditors within

the confines of the Bankruptcy Code. Allowing dismissal of the Debtors' bankruptcy will curtail the unnecessary incurrence of additional administrative costs, further the Bankruptcy Code's goal of efficient administration of the Debtors' estates and is in the best interests of creditors. On information and belief, Dymas does not oppose the relief requested.

## NOTICE

36. This Motion, together with notice of the hearing on the Motion, has been served upon: (a) counsel to the Committee, (b) counsel to Dymas, (c) the U.S. Trustee, and (d) all persons or entities that have properly requested notice pursuant to Local Bankruptcy Rule 2002-1(d). Additionally, notice of the hearing on this Motion has been served upon (a) the Debtors' creditors, and (b) the Debtors' equity holders. In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

## NO PRIOR REQUEST

37. No prior request for the relief sought in this Motion has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that this Court (i) enter an order, substantially in the form attached hereto as **Exhibit B**, (a) dismissing the Debtors' chapter 11 cases and (b) granting certain related relief and (ii) grant such other and further relief as is just and proper.

Dated: October 23, 2009
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Robert J. Dehney (No. 3578)
Gregory W. Werkheiser (No. 3553)
Gregory T. Donilon (No. 4244)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors-in-Possession*

3194501.3